## United States District Courthouse
## For the Southern District of New York

Yashua ank bey el,
c/o YASHUA ANK BEY EL  Estate
And the family of Moors,
~ 421 8ᵗʰ Ave , New York , New York , [10001]
**Claimant / Complainant**

    **Plaintiff**

      **vs**

Melissa Ferraiola

Knuckles, Komoshinski, Manfro, LLP

**565 TAXTER ROAD, SUITE 590**
**ELMSFORD, NY 10523**

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

civil **19 CV 7632**

~~Miscellaneous Case No.~~

FILED UNDER SEAL PURSUANT TO

31 U.S.C.  § 3730 (b) (1)

COMPLAINT FOR VIOLATIONS OF
THE FALSE CLAIMS ACT

JURY TRIAL DEMANDED

2019 AUG 13  PM 4: 49
RECEIVED SDNY PRO SE OFFICE

---

## COMPLAINT

Yashua Ank Bey El brings this qui tam action; pursuant to 31 USC § 3729  et seq,
this Complaint is to be filed **in camera** and **under seal,** and is to remain under seal for a
period   of at least sixty days and shall not be served on Defendants until the Court so orders.
This suit is not based on prior public disclosure of allegations or transactions in a criminal,
civil, or administrative hearing, lawsuit or investigation; in a Government Accountability
Office or Auditor General's report, hearing, audit, investigation; in the news media; or in
any other location as the term "publicly disclosed is defined in 31 U.S.C. § 3730, but rather
information from Realtor. In the alternative, to the extent there has been a public disclosure
unknown to Realtor, he is an original source under the aforementioned statute. As more fully set
forth in this Complaint, Yashua Ank Bey El has direct and independent knowledge of the
information on which the allegations herein are based, and witnessed directly the fraudulent
actions and representations by the Defendants against the United States, its departments or
agents. (See Exhibit A Securitization Audit and Exhibit B Affidavit)

Further, the United States Government may elect to intervene and proceed with the action within the sixty day time frame after it receives both the Complaint and the material evidence submitted to it, and related causes of action, on the behalf of the United States of America, against KNUCKLES, KOMOSHINSKI, MANFRO, LLP  and alleging as follows starting in the Introduction which follows Jurisdiction and Venue.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.0 § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § § 3729 and 3 73 0. Plaintiff establishes subject matter jurisdiction under 28 U.S.C. § 3730(b). Under 31 U.S.C. § 3730 (e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint for which

Yashua Ank Bey El is not an "original source," additionally Defendants and each of them may be found in the District and transact business in this District as set forth above. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because Defendants are found, transact business, and committed the acts alleged herein and proscribed by 31 U.S.0 § 3729 in this District. Defendant's actions in the categorization, underwriting and sale of mortgages to the Entities, to the United States or its departments or agents are continuous and systematic, and substantially occurred or continue to occur in the State of NEW YORK.

## INTRODUCTION

This is a qui tam action under the False Claims Act ("FCA"), the Racketeer Influenced & Corrupt Organization Act ("RICO"), the Freedom of Information Act ("FOIA") *5 USC § 552,* the Fraud Enforcement and Recovery Act ("FERA"), the Truth in Lending Act ("TILA"), the American Recovery and Reinvestment Act ("ARRA"), and the Helping Families Save Their Homes Act; brought by Realtor to

recover treble damages and civil penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3729

*etseq.* arising from fraud on the Court 18 USC § *1957,* 8 USC § 1324c,, the Federal National Mortgage

Association (commonly referred to and referred to herein as "Fannie Mae"), the Generally Accepted

Accounting Principles ("GAAP") 12 USC § 183 In, Tax Fraud, the Troubled Asset Relief Program

("TARP") 12 USC Chapter *52,* Federal Home Loan Mortgage Corporation (commonly referred to and

referred to herein as "Freddie Mac") the United States Department of Housing and Urban Development

("HUD"), collusion 18 Usc § 371, conspiracy to defraud the United States 18 Usc § 286 and its citizens, racketeering 18 U.S.C. §§ 1961-1968 and theft by deception 18 usc § 1028 in connection with Defendants residential mortgage lending business practices.

The aforementioned Defendants have purposely collaborated to create Mortgage "vehicles" to exploit the ignorance of the American people concurrently utilizing those same vehicles to take advantage of the trust of the United States Government and exploit loopholes and weakness of the established financial system. These white collar, civil Rico racketeering collaborations were not accidents but maliciously manufactured, and designed for exorbitant financial gain at the expense of its victims; with no care nor concern for the ramifications to the economy (with trillions of dollars stolen), economic system or persons they would affect. Realtor I Yashua Ank Bey El is a American who has first hand experience of the impact of the Defendants fraudulent actions as a victim of foreclosure due to fraud upon the court (See Exhibit A - Mortgage Securitization Audit and Exhibit B Affidavit).

The fraud on the court denies the public interest, thwarts the FOIA, transparency as the requested court approval of settlements in which the Defendants resolve the serious allegations of fraud brought against them "without admitting or denying the allegations of the complaint. "To this end, each of the proposed consent Judgments now presented to this court is accompanied by a formal written "consent" of the defendant agreeing, pursuant to 17 C.F.R § 205.5, "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." "This might be defensible if all that were involved was a private dispute between private parties. But here an agency of the United States is saying, in effect, "Although we claim that these defendants have done terrible things, they refuse to admit it and we do not propose to prove it, but will simply resort to gagging their right to deny it." "The disservice to the public inherent in such a practice is palpable.

*nolo contendere* except in the most unusual circumstances and only after a recommendation for doing so has been approved by the Assistant Attorney General responsible for the subject matter or by the Associate Attorney General, Deputy Attorney General or the Attorney General."); U.S. Dep't of Justice, U.S. Attorneys' Manual § *9-27.500* (2006) ("The attorney for the government should oppose the acceptance of a plea of *nolo contendere* unless the Assistant Attorney General with supervisory responsibility over the subject matter concludes that the circumstances of the case are so unusual that acceptance of such a plea would be in the public interest."). As the great U.S. Attorney General Herbert Brownell, Jr. stated in a 1953 departmental directive:

[A] person permitted to plead *nolo contendere* admits his guilt for the purpose of imposing punishment for his acts and yet, for all other purposes, and as far as the public is concerned, persists in his denial of wrongdoing. It is no wonder that the public regards consent to such a plea by the Government as an admission that it has only a technical case at most and that the whole proceeding was just a fiasco.

*See* Comment, U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-27.500 (2006).

Moreover, as a practical matter, it appears that defendants who enter into consent judgments where they formally state, with the S.E.C.'s full consent, that they neither admit nor deny the allegations of the complaint, thereafter have no difficulty getting the word out that they are still denying the allegations, notwithstanding their agreement not to "make any public statement" denying the allegations. Reacting to the equivocal press releases issued by some defendants after such settlements, S.E.C. Commissioner Luis A. Aguilar has expressed the "hope that this revisionist history in press releases will be a relic of the past," but added "If not, it may be worth revisiting the Commission's practice of routinely accepting settlements from defendants who agree to sanctions 'without admitting or denying' the misconduct." *See* Commissioner Luis A. Aguilar, Speech by SEC Commissioner: Setting Forth Aspirations for 2011, Address to Practicing Law Institute's SEC Speaks in 2011 (Feb. 4, 2011)."

These calculated well executed actions of mortgage and securities fraud by the Defendants is compounded by their fraud upon the courts; as they continue to falsify documents make false claims against the Government (by omission and commission), collect government funded insurance policies, move for foreclosure proceedings and if caught agree to terms with the governing agencies while never admitting guilt, hence they are able to continue to conduct business at usual; subsequently denying home owning American citizens their right to due process and justice all while making the Government and judiciary complicit and accomplices in the largest Mortgage and Securities fraud in the history of this great country. These same settlements and consent judgments thwart the very foundation and fabric of the FOIA, by denying full disclosure or establishing precedent, therefore society continues to be in the dark, people are continually loosing their homes to a fraudulent racketeering machine

## ALLEGATIONS

New York State Trust Law Statutes state: Unless an asset is transferred into a life time trust, the asset does not become trust property. ( NY Estates, Powers and Trust Law § 7-1.18). A trustee's act that is contrary to the trust agreement is void.

(NY Estates, Powers and Trust Law § 7-2.4). If the investment trust that ostensibly owns the mortgage obligation is a REMIC, the trustee, the QSPE, and the other parties servicing the trust, have no legal or equitable interest in the securitized mortgages. Therefore, any servicer ( i.e. KNUCKLES, KOMOSHINSKI, MANFRO, LLP) who alleges that they have the right, or that they have been assigned the right, to claim that they are the agent for the holder of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility. In light of this, by what authority can you show that you can administer a lawful foreclosure? in order for the investment entity to be a REMIC (in other words, in order for the entity to be able to qualify for the single taxable event as a pass through entity), all interest in the mortgage is supposed to be transferred forward to the certificate holders. Well, in fact, *such a transfer never occurs*. Either that is the case, or the parties who state that they have a right to foreclose on a securitized note are not being truthful when they present themselves as the real party in interest. In any case, they cannot have it both ways. The servicer cannot claim to hold legal and/or equitable interest in the mortgages held in the name of an investment trust that also provides the (REMIC) pass through tax benefit to its investors. Does the Master Servicing Agreement - made public through its filing with the Securities and Exchange Commission - show that the entity is a REMIC?

If so, the note has become unenforceable because the unnamed parties who are receiving

the pretax income from the entity are the real parties in interest. They hold the legal and/or equitable interest in the mortgages held, but they do not have the ability to foreclose on any one individual mortgage because the mortgages held by the REMIC have all been bundled into one big income-producing unit. Simply stated, the vast majority of litigants - and judges - have not been properly informed as to the true nature of this type of transaction. This is said not to insult anyone. Quite to the contrary, this is just to say that the true identity of the real party in interest is able to be obfuscated in the labyrinth of the securitization scheme such that whoever steps forward claiming to be that party and showing documentation appearing to be legitimate is assumed to have standing, and there are too few knowledgeable challengers of that mistaken assumption. So much more so in the case of the "layman" homeowner like Relator Kimmy R Cathey. Most homeowners have no idea that the transaction being referred to as a debt and as an obligation that they must pay or be subject to foreclosure, has actually already been paid. And not just once! In cases where a default has been alleged, the securitized note has likely already been satisfied (not just sold and/or assigned) four or five times over. Securitization is a product of the genius of capitalism. As long as profits continued to be made, all participants did very well from this creative new financial arrangement, and bliss reigned supreme. Then the other shoe dropped. There is a mortgage default crisis underway in the United States and a credit crisis caused by toxic assets in the secondary mortgage market. Goldman Sachs estimates that, starting at the end of the last quarter of 2008 through 2014, 13 million foreclosures will occur. The Center for Responsible Lending, based on industry data, predicted 2.4 million foreclosures occurred in 2009, and that there

would be a total of 9 million foreclosures between 2009 and 2012. At the end of the first

quarter of 2009, more than 2 million houses were in foreclosure. Mortgage Bankers'

Ass'n, Nat'l Delinquency Survey Q109 at 4 (2009) reporting that *3.85%* of 44,979,733,

or 1.7 million, these spiraling foreclosures weaken the entire economy and devastate the

communities in which they are concentrated. According to The Subprime Lending Crisis:

The Economic Impact on Wealth, Property Values and Tax Revenues, and How We Got

Here, foreclosed home owners are projected to lose $71 billion due to foreclosure crisis,

while neighbors will lose $32 billion, and state and local governments will lose $917

million in property tax revenue.

## SECURITIZATION AND TAX FRAUD

In the mortgage securitization process, collateralized securities are issued by, and

receive payments from, mortgages collected in a collateralized mortgage pool. The

collateralized mortgage pool is treated as a trust. This trust is organized as a special

purpose vehicle ("SPV") and a qualified special purpose entity ("QSPE") which receives

special tax treatment. The SPV is organized by the securitized so that the assets of the

SPV are shielded from the creditors of the securitized and the parties who manage it. This

shielding is described as making the assets "bankruptcy remote". To avoid double

taxation of both the trust and the certificate holders, mortgages are held in Real Estate

Mortgage Investment Conduits ("REMICS"). To qualify for the single taxable event, all

interest in the mortgage is supposed to be transferred forward to the certificate holders.

The legal basis of REMICs was established by the Tax Reform Act of 1986 (100 Stat.

The principal advantage of forming a REMIC for the sale of mortgage-backed securities
*2085*, 26 U.S.C.A. §§ 47, 1042), which eliminated double taxation from these securities.

is that REMIC's are treated as pass-through vehicles for tax purposes helping avoid double-taxation. For instance, in most mortgage-backed securitizations, the owner of a pool of mortgage loans (usually the Sponsor or Master Servicer) sells and transfers such loans to a QSPE, usually a trust, that is designed specifically to qualify' as a REMIC, and, simultaneously, the QSPE issues securities that are backed by cash flows generated from the transferred assets to investors in order to pay for the loans along with a certain return. If the special purpose entity, or the assets transferred, qualify as a REMIC, then any income of the QSPE is "passed through" and, therefore, not taxable until the income reaches the holders of the REMIC, also known as beneficiaries of the REMIC trust. Accordingly, the trustee, the QSPE, and the other parties servicing the trust, *have no legal or equitable interest in the securitized mortgages*. Therefore, any servicer who alleges that they are, or that they have the right, or have been assigned the right, to claim that they are the agent for the holder of the note for purposes of standing to bring an action of foreclosure, are stating a legal impossibility. Any argument containing such an allegation would be a false assertion. Of course, that is exactly what the servicer of a securitized mortgage that is purported to be in default claims. The same is the case when a lender makes that same claim. The party shown as "Lender" on the mortgage note was instrumental in the sale and issuance of the certificate to certificate holders, which means they knew that they were not any longer the holder of the note.

The QSPE is a weak repository and is not engaged in active management of the assets. So, a servicing agent is appointed. Moreover, *all legal and equitable interest in the*

Compliance with the REMIC and insulating the trust assets from creditors of third parties *mortgages are required by the REMIC to be passed through to the certificate holders*.

(who create or service the trust) leads to unilateral restructuring of the terms and conditions of the original note and mortgage. The above fact, and the enormous implications of it, cannot be more emphatically stressed. A typical mortgage pool consists of anywhere from 2,000 to 5,000 loans. This represents millions of dollars in cash flow payments each month from a servicer (receiving payments from borrowers) to a REMIC (QSPE) with the cash flow "passing through", tax-free, to the trust (REMIC). Those proceeds are not taxed until received as income to the investors. Only the investors have to pay taxes on the payments of mortgage interest received. The taxes a trust would have to pay on 30, *50,* or 100 million dollars per year if this "pass through" taxation benefit didn't exist would be substantial and it would, subsequently, lower the value of the certificates to the investors, the true beneficiaries of these trusts. Worse, what would be the case if a trust that was organized in February 2005 were found to have violated the REMIC guidelines outlined in the Internal Revenue Code? At $4 million per month in cash flow, there would arise over $200 million in income that would now be considered taxable. It is worth repeating that in order for one of these investment trusts to qualify for the "pass through" tax benefit of a REMIC (in other words, to be able to qualify to be

able to be referred to as a REMIC), *ALL LEGAL AND EQUITABLE INTEREST IN THE MORTGAGES HELD IN' THE NAME OF THE TRUST ARE VESTED IN THE INVESTORS,* not in anyone else *A TANY TIME.* If legal and/or equitable interest in the mortgages held in the name of the trust are claimed by anyone other than the investors, those that are making those claims are either defrauding the investors, or the homeowners & courts, or both. So, if the trust, or a servicer, or a trustee, acting on behalf of the trust, is found to have violated the very strict REMIC guidelines (put in place in order to

qualify as a REMIC), the "pass through" tax status of the REMIC can be revoked. This, of course, would be the equivalent of financial Armageddon for the trust and its investors. A REMIC can be structured as an entity (i.e., partnership, corporation, or trust) or simply as a segregated pool of assets, so long as the entity or pool meets certain requirements regarding the composition of assets and the nature of the investors' interests. No tax is imposed at the REMIC level. To qualify as a REMIC, all of the interests in the REMIC must consist of one or more classes of "regular interests" and a single class of "residual interests." Regular interests can be issued in the form of debt, stock, partnership *interests, or trust certificates, or any other form of securities, but* must provide the holder the unconditional right to receive a specified principal amount and interest payments.

REMIC regular interests are treated as debt for federal tax purposes. A residual interest in a REMIC, which is any REMIC interest other than a regular interest, is, on the other hand, taxable as an equity interest. According to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the "contribution" and transfer process (of the notes) must be true and complete sales between the parties and must be accomplished within the three month time limit from the date of "startup" of the entity. Therefore, every transfer of the note(s) must be a true purchase and sale, and, consequently the note must be endorsed from one entity to another. Any mortgage note/asset identified for inclusion in an entity seeking a REMIC status must be sold into the entity within the three month time period calculated from the official startup day of the REMIC. Before securitization, the holder of an enforceable note has a financial responsibility for any possible losses that may occur arising from a possible default, which means that holder also has the authority to take steps to avoid any such losses (the right to foreclose). Securitization, however, effectively severs any such financial responsibility for losses from the authority to incur or avoid those losses. With securitization the

the mortgage and note unalienable. The reason is simple: once certificates have been issued, the note cannot be transferred, sold or conveyed; at least not in the sense that such a transfer, sale, or conveyance should be considered lawful, legal, and legitimate. This is because the securitized note forever changes the nature of that instrument in an irreversible way, much in the same way that individual pineapples and individual oranges can never be extracted, in their "whole" form, from a pineapple orange smoothie once they've been dropped in the blender and the blending takes place. It might appear that the inability to alienate the note has no adverse consequences for the debtor, but recent history disproves this notion. Several legislative and executive efforts to pursue alternate dispute resolution and to provide financial relief to distressed homeowners have been thwarted by the inability of the United States government to buy securitized mortgages without purchasing most of the certificates issued. An SPV cannot sell any individual mortgage because individual mortgages are not held individually by the certificate holders; the thousands of mortgages held in the name of the REMIC are owned

*collectively* by the certificate holders. Likewise, the certificate holders cannot sell the mortgages. All the *certificate* holders have are the securities, each of which can be publicly traded. The certificate holders are, in no sense, holders of any specific individual note and have no legal or beneficial interest in any specific individual note. The certificate holders do not each hold undivided fractional interests in a note which, added together, total 100%. The certificate holders also are not the assignees of one or more specific installment payments made pursuant to the note. For the certificate holder, there is no note. A certificate holder does not look to a specific note for their investment's income payment. Instead, the certificate holder holds a security similar to a bond with specific defined payments. The issuer of trust certificates is selling segments of cash flow.

*The Servicer, Sub servicer, or some other party (counterparty) likely made a payment to the party who allegedly owns the purported debt obligation. This payment, if made, was intended to cover sums that are alleged to be in default. Therefore, the party who allegedly owns the purported debt obligation has, by virtue of that payment, not been damaged in any way. Therefore, if any sums have thusly been paid, how is it being truthfully stated that a default has occurred?*

## THE FALSE CLAIMS ACT

The False Claims Act provides liability for any person (I) who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"; or (ii) who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.c. § 3729(a)(I)(A)-(B). The False Claims Act further provides that any person who violates the Act: "is liable to the United States Government for a civil penalty of not less than *[$5,500]* and not more than [$11,000] , plus 3 times the amount of damages which the Government sustains because of the act of that person... " 31 U.S.C. § 3729(a); see 28 C.F.R. § *85.3(a)(9).*

## UNIFORM RESIDENTIAL MORTGAGE SATISFACTION ACT
## SECTION 203.  SECURED CREDITOR TO SUBMIT SATISFACTION FOR RECORDING; LIABILITY FOR FAILURE.

(a)     A secured creditor shall submit for recording a satisfaction of a security instrument within 30 days after the creditor receives full payment or performance of the secured obligation. If a security instrument secures a line of credit or future advances, the secured obligation is fully performed only if, in addition to full payment, the secured creditor has received a notification requesting the creditor to terminate the line of credit or containing a statement sufficient to terminate the effectiveness of the provision for future advances in the security instrument.

(b)     Except as otherwise provided in Section 205, a secured creditor that is35 required to submit a satisfaction of a security instrument for recording and does not do so by the end of the period specified in subsection (a) is liable to the landowner for any actual damages caused by the failure, but not punitive damages..

(c)     Except as otherwise provided in subsection (d) and in Section 205, a secured creditor that is required to submit a satisfaction of a security instrument for recording and does not do so by the end of the period specified in subsection (a) is also liable to the landowner for [$500] and any reasonable attorney's fees and court costs incurred if, after the expiration of the period specified in subsection (a):

(1)     the landowner gives the creditor a notification, by any method authorized by Section 103 that provides proof of receipt, demanding that the creditor submit a satisfaction for recording; and

(2)     the creditor does not submit a satisfaction for recording within 30 days after receipt of the notification.

(d)     Subsection (c) does not apply if the secured creditor received full payment or performance of the secured obligation before the effective date of this [act].

## Comment

1.　**Obligation to record satisfaction upon full performance. Subsection**

(a)　provides  that the secured creditor has an affirmative obligation to submit for recording a satisfaction of a security instrument within 30 days after full payment or performance of the secured obligation. If the secured creditor fails to satisfy this obligation, subsection

(b)　renders the creditor liable for actual damages caused by its failure, but not punitive damages other than the statutory penalty authorized by subsection (c). The exercise of this remedy is subject to the normal rules of pleading and proof.

2.　**Liability for statutory penalty and attorney's fees. Subsection**

(c)　authorizes statutory damages of [$500], and reimbursement of reasonable attorney's fees, against a secured creditor that fails to comply with the obligation to record a timely satisfaction of a security instrument. 36 The landowner may recover this sum in addition to any actual damages recoverable under subsection

(b).　This provision is conceptually similar to U.C.C. Section 9-625(e)(4), which provides for a minimum statutory damage recovery whenever an Article 9 secured party fails to provide a termination statement in a timely manner. Potential liability for statutory damages and attorney's fees (in addition to any actual damages) should provide secured creditors with appropriate incentives to take steps to record satisfactions in a timely manner. The landowner may not recover statutory damages and attorney's fees under subsection

(c)　unless the landowner first gives notification to the secured creditor, by a method authorized by Section 103 that also provides proof of receipt, demanding that the secured creditor submit a satisfaction document for recording within 30 days of the notification. The requirement for proof of receipt serves to ensure that the notification will be given in a manner that will serve to alert the secured creditor's administrative staff as to the potential legal significance of the notification, there by facilitating the creditor's ability to respond promptly to the notification. If the landowner fails to provide this notification, the landowner may still recover damages for any actual loss caused by the secured creditor's failure to record a timely satisfaction, but cannot collect statutory damages or attorney's fees. The landowner may not give the notification required by subsection

These statutes would continue to apply to a lender that received full payment of a mortgage obligation prior to the effective date of this Act but failed to record a timely satisfaction.

4.   **Servicer's liability as "secured creditor."** In many cases, secured creditors will delegate responsibility for servicing mortgage loans, including the responsibility to record satisfactions of security instruments. In these cases, the Act treats the servicer as a "secured creditor," and the landowner thus could hold the servicer liable under the terms of the Act. Such delegations of authority do not automatically relieve the delegating secured creditor of its obligations under the Act. 37

5.   **Disputes over whether full performance received.** Under the Act, the secured creditor must submit a satisfaction for recording if it has received full payment or performance of the secured obligation. The mere existence of a dispute over the balance of the secured obligation does not by itself toll the applicable 30-day grace periods established by this section. If the secured creditor does not submit a satisfaction for recording within 30 days, the secured creditor bears the risk that a court might later conclude that the landowner did in fact tender full payment of the secured obligation and that the secured creditor should have recorded a satisfaction. *See* Section 202, Comment 5, Illustration 7.

6.   **Fees for preparing and recording satisfaction.** This Act leaves undisturbed any existing laws with respect to the secured creditor's ability to charge a fee for the preparation and recording of a satisfaction. Statutes in some states authorize the lender to charge a specified or reasonable fee to cover expenses of preparation and recording, while statutes in other states obligate the lender to provide the satisfaction without charge

7.   **Landowner entitled to damages.** Under the Act, the "landowner" is the person entitled to collect actual and/or statutory damages in the event that a secured creditor fails to record a timely satisfaction. In this context, this means the landowner at the time of the secured creditor's failure to record a timely satisfaction. For example, suppose that Heinsz owns Blackacre, a home that is subject to a mortgage held by First Bank. Heinsz sells the home to Waldman. At the closing, Heinsz pays to First Bank the amount necessary to satisfy the balance of the mortgage debt, but First Bank fails to record a satisfaction within the 30 days following closing. For purposes of First Bank's liability under this section, Waldman is the landowner.

## CLAIM AND PRAYER FOR RELIEF

WHEREFORE, the Claimant / Plaintiff respectfully request that judgment be entered in its favor and against all Defendants as follows:

1. That defendants cease and desist from violating 31 U.S.C. § 3729 et seq.;

2. That Court enters judgments against defendants in an amount equal to three times the amount of damages the United States has sustained due to the negligent actions of the Defendants, plus a civil penalty of not less than *$5,500* and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3. That Realtor / Plaintiff is awarded his home with free and clear title due to fraud on the court per Federal Rules of Civil Procedure 60(d)(3) which is not time barred and intended to protect the judicial process;

4. That Plaintiff be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

5. That Plaintiff be awarded all costs of this action, including attorney's fees, cost, and expenses pursuant to 31 U.S.0 § 3730(d); and the cost of the attempted sale as stated in the UNIFORM RESIDENTIAL MORTGAGE SATISFACTION ACT 2004, $ 1,102,579.86.00

6. That the United States and Plaintiff be granted all such relief as the court deems just and proper.

Respectfully Filed ,

By:

Yashua Ank Bey El,
c/o YASHUA ANK BEY EL  Estate

STATE OF NEW YORK COUNTY OF NEW YORK  COUNTY

## AFFIDAVIT OF TRUTH

Sworn  to  (or affirmed)  and  subscribed  before  me  that  all  the

information I Yashua Ank Bel El  herein is true correct and complete.

by: Yashua. Ank-Bey: El:

This  day  of  12  of  August,  2019,  By
(13th)

_Krista Sessoms_

Notary public

My Commission Exp.  03/29/22.

KRISTA SESSOMS
Notary Public, State of New York
No. 04SE6219517
Qualified in Kings County
Commission Expires March 29, 2022

**SEE ATTACHMENTS EXHBIT A1-A39**

**PROOF OF SERVICE This is to certify that the within and foregoing**

AFFIDAVIT OF TRUTH was deposited into the U.S. Mail for

service upon the following:

Defendants:
Melissa Ferraida
Knuckles, Komoshinski, Manfro, LLP
**565 TAXTER ROAD, SUITE 590**                              )
**ELMSFORD, NY 10523**
CERTIFIED MAIL  OR EXPRESS MAIL No. _____

_____  ,  _____

United States District Courthouse
For the Southern District of New York

Yashua ank bey el,
c/o YASHUA ANK BEY EL  Estate                    )

And the family of Moors,                              )
~ 421 8ᵗʰ Ave , New York , New York , [10001]        )
Claimant / Complainant                               )

      **Plaintiff**                                 )

             **vs**                                  )

Melissa Ferraiola                                    )

Knuckles, Komoshinski, Manfro, LLP                   )

        **Defendants,**    )
**565 TAXTER ROAD, SUITE 590,**                      )
**ELMSFORD, NY 10523**                               )

Miscellaneous Case No. _____

FILED UNDER SEAL PURSUANT TO

31 U.S.C.  § 3730(b)(l)

COMPLAINT FOR VIOLATIONS OF
THE FALSE CLAIMS ACT

**SUMMONS**

---

YOU ARE HEREBY SUMMONED and required to serve upon plaintiff(s) a verified answer to the verified counter complaint this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the counter complaint.

## COPY CERTIFICATION BY DOCUMENT CUSTODIAN

**************************************************************

State of _____New York_____   I, _____El, Yashua-AnkBey_____

(Name of custodian of original document)

}ss

County of _____New York_____   hereby swear (or affirm) that the attached original of:

_____Affidavit of Satisfaction_____

(Description of original document)

is a true, correct, and complete copy of a document in my possession.

(SEAL)   *El, Yashua-*

(Signature of custodian of original document)

Subscribed and sworn (or affirmed) to before me this

_26_ day of _November_ 20 _18_

(Notary's Signature)

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 20__

_____   _____   _____

Exhibit -1   Exhibit -2   Exhibit -3

ATTENTION NOTARY: Although the information below is OPTIONAL, it could prevent fraudulent attachment to another document.

THIS CERTIFICATE   Title of type of document: _____Affidavit of Satisfaction_____

MUST BE ATTACHED

TO THE DOCUMENT

DESCRIBED AT THE RIGHT   Number of pages s: _____ Date of Document: 11-26-2018

Signer or issuing agency: _____

**************************************************************

## NOTARY'S CERTIFICATE OF SERVICE

It is hereby certified, that on the date noted below, the undersigned Notary Public mailed to:

CAMBRIIDGE HOME CAPTIAL LLC   CITIMORTGAGE, INC.,
80 CUTERMILL RD STE 410     JOHN C. GERSPACH, CFO
GREAT NECK, NEW YORK, 11021    388 GREENWICH STREET
              NEW YORK, 10013

Hereinafter, "Recipient," the documents and papers pertaining to a certain

Account No. .2004364254-3 , Notice of Pending Affidavit of Satisfaction

regarding El, Yashua  as follows:

1. **Notice of Pending Affidavit of Satisfaction** dated on or about October 27, 2018;
2. Reference copy of this **Notary's Certificate of Service** (signed original on file)
by Registered or certified Mail No. <u>70181130000042312555</u> Return Receipt attached
by placing same in a postpaid envelope properly addressed to Recipient at the said address
and depositing same at an official depository under the exclusive face and custody of the
U.S. Postal Service within the State of New York.

_(signature)_ (APK) 10/27/2018 (Seal)

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 20___

NOTARY PUBLIC DATE

My commission expires: _(signature)_ (APK) (Stamp)
Cheryl Marbry,

## NOTICE OF PENDING AFFIDAVIT OF SATISFACTION

I **Cheryl Mabry,** domiciling on the land located near 271 Cadman Plaza East Po Box 21435 Brooklyn, New York, 11202

1. Being dually appointed as Satisfaction Agent, acting for and with the authority of the landowner, named as heir to the land and in conjunction with named Grantor Christopher Celestine in the Mortgage deed recorded in Kings County Recorder's office on Block 4456 lot 78, hereinafter referred to as the 'Security Agreement' service by CitiMortgage (the "Trustee") 393 Montauk Ave, Brooklyn New York 11208, commonly known as 393 Montauk Ave more specifically described as :

    All That Parcel Of Land Being Known And Designated As Section 14 Lot Number 78, In  Block Lettered "4456" Beginning" At A Point Distant 95 Feet 10-1/4 Inches Southerly From The Corner Formed By The Intersection Of The Notherrnly Side Of Dumont Ave And The Easterly Side Of Montuak Avenue: Running Thence Easterly At Right Angles To Montauk Avenue And Part Of The Distance Through A Party 100 Feet: Thence  Southernly  Parallel With Montauk Avenue 41 Feet: Thence Westerly At  The Right Angle To Montauk Avenue 100 Feet: To Montauk Avenue: Thence Northernly Along The Easterly Side Of Montauk  Avenue 41 Feet To The  Point  Or Place Of The Beginning . Fully Described In Reel 5303 Page 0988, Recorded In Kings County Brooklyn, New York; With An Address Of 393 Montauk Ave, Brooklyn, Ny  11208 "Herein The Property"

2. I have reasonable grounds to believe that the real property described in the security instrument constitutes residential real property; and that

3. The CitiMortgage alleges to be a secured creditor; and that

4. The secured creditor has received full payment or line of credit for performance of the secured obligation; and that

5. The secured instrument does not appear on the record; and therefore

6. I, as Satisfaction Agent, acting with authorization of the land owner, real property described in the security instrument, intends to sign and submit for the recording for the recording an affidavit of satisfaction unless Within **30 days** of the postmarked receipt of this presentment that the secured creditor submits a satisfaction of the security agreement for the recording; or unless

7. The satisfaction agent receives from the secured creditor an Affidavit of notification stating that the secured obligation remains unsatisfied; or unless

8. The satisfaction agent receives from the secured creditor a notification stating that the secured creditor has Assigned the security instrument and indentifying the name and address of the assignee

Mr.  *El, Yashua-Ank Bey*

Executed on this 27, day of October 2018

Chery Ann Mabry, Satisfaction agent

**CHERYL ANN MABRY**
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 2020

NOTICE TO AGENT IS NOTICE TO PRINCIPAL

## CERTIFICATION OF NON-RESPONSE / NON-PERFORMANCE

New York        }
                } ss      Cheryl Mabry Notary
Kings County    }         271 Cadman Plaza East Po Box 21435
                          Brooklyn, New York, 11202

**PRESENTMENT**        Be it known, that, the person signing below, a duly empowered Notary Public, at the request of
                       El, Yashua

                       CITIMORTGAGE, INC.,
                       JOHN C. GERSPACH, CFO
                       388 GREENWICH STREET
                       NEW YORK, 10013

the time limit having elapsed for rebuttal or acceptance thereof and providing a satisfaction of mortgage, which was
not filed and a non-response / nonperformance. **PROTEST** Whereupon, the Notary Public signing below, for the reason
**dishonor by non-response/non-performance**, does publicly and solemnly certify the dishonor as against all parties
it may concern for liability equivalent to all costs, damages and interest incurred, or hereafter incurred, by reason of
non-performance thereof and **stipulations therein. NOTICE** The undersigned Notary Public, certifies that on
**11-26-2018** Notice(s) of Default were sent to the parties noted below by depositing in a depository of the
United States Postal Service within the State indicated herein a sealed envelope containing said Notices(s)
directed to the respective person(s) or entity(ies) at the last known corresponding address noted below:

NAME ADDRESS

CITIMORTGAGE, INC.,
JOHN C. GERSPACH, CFO
388 GREENWICH STREET
NEW YORK, 10013

**TESTIMONY** In testimony of the above, I have signed my name and attached my official seal
Notary Public
My commission expires: _01 21 2020_ (ABR)
Date _11 26 2018_                                          *El, Yashua*

---

### CERTIFICATION OF DUE PRESENTMENT OF NOTICE OF PENDING
### SATISFACTION UNDER NOTARY SEAL

**Date of Presentment:**          October 27, 2018

**Notice Presented Under Seal:**  COMMERCIAL AFFIDAVIT DATED OCTOBER 27, 2018 REQUEST REGARDING A
                                  STATEMENT OF ACCOUNT DATED OCTOBER 27, 2018.

**Notary's Certification:**       The above-noted parties were presented notice under notary seal that certification of
                                  non-response or default within thirty (30) days of postmark, for the Commercial
                                  Affidavit, notice postmark and default, for the Request Regarding a Statement of Account,
                                  pending satisfaction would comprise their acceptance of the facts set forth within these
                                  Instruments, the time having elapsed for response thereof.

**CHERYL ANN MABRY**
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 2022

NOTICE TO AGENT IS NOTICE TO PRINCIPAL



## NOTICE OF DEFAULT

New York        }
                } ss.                          Default date 11-25-2018
Kings County    }

**PRESENTMENT**   Be it known, that, the person signing below, a duly empowered Notary Public,
at the request the request of El, Yashua In care of        Cheryl Mabry Notary
                                                           271 Cadman Plaza East Po Box 21435
                                                           Brooklyn, New York, 11202

Creditor Address        CITIMORTGAGE, INC.,
                        JOHN C. GERSPACH, CFO
                        388 GREENWICH STREET
                        NEW YORK, 10013

did duly present on <u>11-26-2018</u> the instrument(s) notice of pending satisfaction dated <u>11-26-2018</u> to <u>CITIMORTGAGE, INC.,
JOHN C. GERSPACH, CFO</u> Respondent(s) did not respond; signed by Cheryl Mabry Notary <u>REQUEST REGARDING A STATEMENT
OF ACCOUNT; and, Commercial Affidavit</u> the time limit having elapsed for acceptance or rebuttal thereof, which was refused
by non-performance/non-response.

**PROTEST** Whereupon, the Notary Public signing below, for the reason <u>**dishonor by non-performance/nonresponse,**</u>
does publicly and solemnly certify the dishonor as against all parties it may concern for default on the instrument(s),
by reason of non-performance/non-response thereof and **stipulations therein.**

**NOTICE** The undersigned Notary Public, certifies that on 11-26-2018 Notice(s) of Default were sent to
the parties noted below by depositing in a depository of the United States Postal Service within the State indicated herein a
sealed envelope containing said Notices(s) concerning pending affidavit of satisfaction directed to the respective person(s) or
entity(ies) at the last known corresponding address noted below:

**NAME ADDRESS**

        CITIMORTGAGE, INC.,
        JOHN C. GERSPACH, CFO                    *El, Yashua*
        388 GREENWICH STREET
        NEW YORK, 10013

**TESTIMONY** In testimony of the above, I have signed my name and attached my official seal

Notary Public
My commission expires: 11 21 2020
Date 11 26 2020

CHERYL ANN MABRY
Notary Public State of New York
Registration No. 01MA6350859
Kings County
Certificate Filed in New York County
My Commission Expires November 21, 2020

### WARRANTY GRANT DEED

### 15 U.S. Code § 1692l.Administrative enforcement

(Pub. L. 90–321, title VIII, § 814, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 98–443, § 9(n), Oct. 4, 1984, 98 Stat. 1708; Pub. L. 101–73, title VII, § 744(n), Aug. 9, 1989, 103 Stat. 440; Pub. L. 102–242, title II, § 212(e), Dec. 19, 1991, 105 Stat. 2301; Pub. L. 102–550, title XVI, § 1604(a)(8), Oct. 28, 1992, 106 Stat. 4082; Pub. L. 104–88, title III, § 316, Dec. 29, 1995, 109 Stat. 949; Pub. L. 111–203, title X, § 1089(3), (4), July 21, 2010, 124 Stat. 2092, 2093.)

**DUE NOTICE:**This is a notice of tax,notice in due form...wilde v. Wilde,2 Nev.306.

**YASHUA ANK BEY EL Grantor,** an unenumerated association Grandfathered via the serial states of the union..International organization Postal Master General per -**COLB** registration #156-71-310907. As Grantor/Settlor for the consideration via receipt/purchase and ownership of the bond registered # RE U.S. 886 586 281 ,Per -HJR -192.public law 73 -10. 31 USC.5118 (d)2. Futhermore I due herby declare all Derivatives, Securities,Employees and persons(in Personum)that i create or manufacture,protected and enforcement via: *Postal Laws, 5 U.S.Stat.739. Internal revenue, 14 U.S.Stat,111,145,152;14id.475,483:15id.167;13id. 239,240,305: 13 id.483. Imports, 4 U.S. Stat. 632:1 id.76. Merchant Vessels.10 U.S.Stat.720.*
I hereby Transfer,Convey ,Grant and Deed private and real property to Yashua Ank Bey El :
A living breathing flesh and blood man,owner and Superior alliodial Bond holder as Grantee and occupant office of the President, located on and near 393 Montauk, Avenue Brooklyn, *United States of America .free rural route.transient .*

*ON THIS FIFTH DAY , EIGTH MONTH,TWO ZERO, ONE NINE*
*Care of County New York,Nation State New York within the United States .I /we* hereby sign this grant / warranty deed.

by: Yashua-Ank Bey El, EX

By:[s]



Print Request ID 2019080700000671 - 0001

**CERTIFIED COPY**

**CITY OF NEW YORK**

**DEPARTMENT OF FINANCE**

**OFFICE OF THE CITY REGISTER, BROOKLYN / KINGS COUNTY**

The document attached hereto:

CRFN 2018000394772, SATISFACTION OF MORTGAGE, recorded on
11-29-2018, 15:00, page(s) 1 - 3

is a true and correct copy of the original document recorded in the Office of
the City Register of New York on as attested by the City Register on
08-07-2019 15:47

Annette M. Hill
City Register

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018112400018001003E9D90

## RECORDING AND ENDORSEMENT COVER PAGE                          PAGE 1 OF 3

Document ID: **2018112400018001**          Document Date: 11-24-2018
Document Type: SATISFACTION OF MORTGAGE          Preparation Date: 11-28-2018
Document Page Count: 1

**PRESENTER:**

YASHUA ANK BEY EL TRUST
PO BOX 198
NEW YORK
NEW YORK, NY 10001
914-363-0828
YABEHOLDINGCOMPANYLLC@GMAIL.COM

**RETURN TO:**

YASHUA ANK BEY EL TRUST
PO BOX 198
NEW YORK
NEW YORK, NY 10001
914-363-0828
YABEHOLDINGCOMPANYLLC@GMAIL.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---------|-------|-----|------|---------|
| BROOKLYN | 4456 | 78 | Entire Lot | 393 MONTAUK AVE |

Property Type: DWELLING ONLY - 4 FAMILY    Air Rights

### CROSS REFERENCE DATA

CRFN:   2007000294896
☒ Additional  Cross References on Continuation  Page

### PARTIES

**MORTGAGER/BORROWER:**
CHRISTOPHER CELESTINE

**MORTGAGEE/LENDER:**
CITIMORTGAGE

### FEES AND TAXES

| Mortgage : | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES:   County (Basic): | $ | 0.00 | | $ 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2018112400018001003C9F10

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

Document ID: **2018112400018001**      Document Date: 11-24-2018      Preparation Date: 11-28-2018
Document Type: SATISFACTION OF MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2008000399180

11-28-2018

# AFFIDAVIT OF SATISFACTION

1. I Cheryl Mabry Being duly appointed Notary as Satisfaction Agent, acting for and with the authority of the landowner, named as heir to the land and in conjunction with named Grantor Christopher Celestine.

2. I am signing this Affidavit of Satisfaction to evidence full payment or performance of the obligations secured by real property covered by the following security instrument ( the "secured instrument") currently held by CitiMortgage (the "secured creditor") The Mortgage deed recorded in Kings County Recorder's office on Block 4456 lot 78, Doc No. 2007052301603001 hereinafter referred to as the 'Security Agreement' service by CitiMortgage (the "Trustee"), Title of instrument: Mortgage, Original parties to instrument: CHRISTOPHER CELESTINE and CAMBRIDGE HOME CAPITAL, LLC Recorded in kings County, 6/7/2007, 10:53 am. In the principal sum amount of 707,400.00, Doc ID 2007052301603001, CFR No. 2007000294896, On April 30 2007, an Assignment of Mortgage to CitiMortgage from CAMBRIDGE HOME CAPITAL, LLC with Mortgage Electronic Registrations Systems .inc as nominee for CAMBRIDGE HOME CAPITAL, LLC to CitiMortgage in the principal sum amount of 707,400.00 and recorded in Kings County Recorder's office Document dated 5/5/2008 filed and recorded 10/9/2008 Doc ID No. 2008100300334001, CFR No. 2008000399180 for loan No. 2004364254 effective date on or before May 5, 2008. In the COUNTY of KINGS covering the premises Known as 393 MONTAUK AVE BROOKLYN, NEW YORK, 11208

   The legal description to the real property to which this affidavit relates, is as follows:
   All That Parcel Of Land Being Known And Designated As Section 14 Lot Number 78, In Block Lettered "4456" Beginning" At A Point Distant 95 Feet 10-1/4 Inches Southernly From The Corner Formed By The Intersection Of The Nothernly Side Of Dumont Ave And The Easterly Side Of Montuak Avenue: Running Thence Easterly At Right Angles To Montauk Avenue And Part Of The Distance Through A Party 100 Feet: Thence Southernly Parallel With Montauk Avenue 41 Feet: Thence Westerly At The Right Angle To Montauk Avenue 100 Feet: To Montauk Avenue: Thence Northernly Along The Easterly Side Of Montauk Avenue 41 Feet To The Point Or Place Of The Beginning . Fully Described In Reel 5303 Page 0988, Recorded In Kings County Brooklyn, New York; With An Address Of 393 Montauk Ave, Brooklyn, New York 11208 "Herein The Property"

3. I have reasonable grounds to believe that:
   a. the secured creditor has received full payment or a line of credit for performance of the balance of the obligations secured by the security instrument; and
   b. the real property described in the security instrument constitutes residential real property.

4. With authorization of the landowner notice of intent to sign and submit the Affidavit of satisfaction has been given to the secured creditor by certified mail article number 70181130000042312555 by method authorized by section 103 that provides proof of receipt and that I would sign and record an affidavit of satisfaction of the security instrument if the 30-day time allowed for response has elapsed, and there exists no evidence that the secured creditor has submitted a satisfaction for the recording nor have I received notification that the secured obligation remains unsatisfied; and therefore the obligations are deemed satisfied.
   Executed on this 28 day of November 2018

   Chery Ann Mabry, Satisfaction agent

   **Acknowledgement**

   **SEAL**

   New York        }
                    } ss.
   Kings County     }

   This instrument was acknowledged before me this 28 day of November 2018, by El' Yashua Executor, land Owner for the Estate ( or Trust) of Yashua El, on behalf of said Estate(or Trust)

   ANDREA TINDAL
   NOTARY PUBLIC-STATE OF NEW YORK
   No. 01___253
   Qualified in Kings County
   My Commission Expires 01-27-202_

   _____
   Notary Republic, State of New York

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kay A. Tisle*

Acting United States Register of Copyrights and Director

**FORM TX**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TXu 1 – 252 – 366**

EFFECTIVE DATE OF REGISTRATION

*July 18, 2005*
Month          Day          Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**1** **TITLE OF THIS WORK ▼**

*Sovereign (Royal) Assent of Atururius*

**PREVIOUS OR ALTERNATIVE TITLES ▼**

*Geodetic Survey and Family Chronicle of the Moorish Empire and it's Bloodright Heirs*

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical serial or collection give information about the collective work in which the contribution appeared   **Title of Collective Work ▼**

If published in a periodical or serial give   **Volume ▼**          **Number ▼**          **Issue Date ▼**          **On Pages ▼**

---

**2**

**NOTE**
Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

**a** **NAME OF AUTHOR ▼**

*The Magnificent Prince Khabir Uriel-Bey*

**DATES OF BIRTH AND DEATH**
Year Born ▼  1/31/65   Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☑ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ *Atururius*
Domiciled in ▶ *America*

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is Yes see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed ▼
*Legal Document / Ratification of Foreign Status and Jurisdiction*

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is Yes see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is Yes see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed ▼

---

**3** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given
a **Year** *2005*    ONLY if this work has been published.

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information
Month ▶          Day ▶          Year ▶          ◀ Nation

---

**4**

See instructions before completing this space

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼ *The Magnificent Prince Khabir Bey*
*'22 West New Street*
*Said Angelsa, New York STATE Constitutional Republic*
*Non Domestic Postal Dispatch # 14709 (Tdc)*

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
**JUL 1 8 2005**
ONE DEPOSIT RECEIVED
**JUL 1 8 2005**
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-11) on the reverse side of this page
• See detailed instructions. • Sign the form at line 10

DO NOT WRITE HERE

**R-L48 is relatively common among 23andMe customers.**
Today, you share your haplogroup with all the paternal-line descendants of the
common ancestor of R-L48, including other 23andMe customers.

# 1 in 21

23andMe customers share your
haplogroup assignment.

---

## You share a paternal-line ancestor with King Louis XVI.



**R-M405 common ancestor**
10,000 years ago

King Louis XVI                                              You

The rule of France by men of the House of Bourbon began with King Henri IV in 1589 C.E. and continued until the
beheading of his direct paternal descendant King Louis XVI in 1793. Several years ago, researchers analyzed a
mummified head and a blood-soaked cloth that they believed might belong to the two kings, and concluded that the
royal paternal line belonged to haplogroup G. In a more recent study, however, a different set of researchers tested three
living men who are direct descendants of the Bourbon kings. Their efforts revealed that the male lineage of the House of
Bourbon is actually a branch of haplogroup R-M405, from which your paternal line also stems.

---

## The Genetics of Paternal Haplogroups

### The Y Chromosome

Most of the DNA in your body is packaged into 23 pairs of chromosomes. The first 22 pairs are matching, meaning that
they contain roughly the same DNA inherited from both parents. The 23rd pair is different because in men, the pair does
not match. The chromosomes in this pair are known as "sex" chromosomes and they have different names: X and Y.
Typically, women have two X chromosomes and men have one X and one Y.

Your genetic sex is determined by which sex chromosome you inherited from your father. If you are genetically male, you
received a copy of your father's Y chromosome along with a gene known as SRY (short for *sex-determining region Y*) that
is important for male sexual development. If you are genetically female, you received a copy of the X chromosome from
both of your parents.

# CERTIFICATE OF ANCESTRY

*DNA Consultants*

*Yashua El*

Ordered a DNA Fingerprint Ancestry Test from Our Laboratories

Showing the Rare **Akhenaten Gene** in Autosomal Ancestry

*Principal Investigator*

DNA Consultants, P.O. Box 2477, Longmont, Colorado 80502

**DDC**
DNA Diagnostics Center

February 24, 2016

# NOTICE OF SALE

SUPREME COURT COUNTY OF KINGS, CITIMORTGAGE, INC., Plaintiff, vs. CHRISTOPHER CELESTINE, ET AL., Defendant(s).

Pursuant to a Judgment of Foreclosure and Sale duly filed on July 30, 2018 and an Order Pursuant to CPLR 2004 Extending the Time to Set Sale, to Ratify Sale Nunc Pro Tunc filed on June 13, 2019, I, the undersigned Referee will sell at public auction at the Kings County Supreme Court, Room 224, 360 Adams Street, Brooklyn, NY on August 15, 2019 at 2:30 p.m., premises known as 393 Montauk Avenue, Brooklyn, NY. All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, Block 4456 and Lot 78. Approximate amount of judgment is $1,102,579.86 plus interest and costs. Premises will be sold subject to provisions of filed Judgment Index # 15792/2008.

Philip Smallman, Esq., Referee

Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, NY 10523, Attorneys for Plaintiff

Cash will not be accepted.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Yashua Ank Bey El

Yashua Ank Bey El Estate

Write the full name of each plaintiff or petitioner.

Case No. _____ CV _____

-against-

Melissa Ferraiola

**NOTICE OF MOTION**

Knuckles, Kosmoshivski, Manford L P

Write the full name of each defendant or respondent.

RECEIVED
SDNY PRO SE OFFICE
2019 AUG 13   PM 4:49

PLEASE TAKE NOTICE that   Plaintiff   Yashua Ank Bey El

plaintiff or defendant      name of party who is making the motion

requests that the Court:

---

Briefly describe what you want the court to do. You should also include the Federal Rule(s) of Civil Procedure or the statute under which you are making the motion, if you know.

In support of this motion, I submit the following documents (check all that apply):

☐ a memorandum of law

☑ my own declaration, affirmation, or affidavit

☐ the following additional documents:

8-13-19

Dated

E l Yashua-Ank-Bey

Signature

E l Yashua-Ank-Bey

Name

_____

Prison Identification # (if incarcerated)

~ 421 8th Ave          NY          NY     10001

Address          City          State     Zip Code

914 960-0641          yabeholdingcompanyllc@gmail.com

Telephone Number (if available)          E-mail Address (if available)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Yashua Ank Bey El
Yashua Ank Bey El Estate

Fill in above the full name of each plaintiff or petitioner.

Case No. _____ CV _____

-against-

Melissa Ferraiola
Knuckles, Komoshinski, Manfro LLP
565 Tater Road Suite590
Elmsford NY, 10523

Fill in above the full name of each defendant or
respondent.

**DECLARATION**   False claims violation

is   There purpose of this declaration is
Melissa Ferraiola and Knuckles Komoshinski, Manfro LLP

Briefly explain above the purpose of the declaration, for example, "in Opposition to Defendant's
Motion for Summary Judgment."

I, I Yashua Ank Bey El , declare under penalty of perjury that the
EL, Yashua Ank Bey
following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court
order. You may also refer to and attach any relevant documents.

Melissa Ferraiola and Knuckles Komoshinski,
Manfro LLP, Made False Claims as
per the Uniform Residential Mortgage
Satifaction Act and agreed to be
Fully liable for all Carnage which
resulted in an illegal unlawful forcloser.
see attachments.

Rev. 6/30/16

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Attach additional pages and documents if necessary.

8-13-19

Executed on (date)

El, Yashua-Ank Bey ©

Signature

El, Yashua-Ank Bey

Name

Prison Identification # (if incarcerated)

431 8th Ave   New, York  , NY   [ 10001 ]

Address                City        State      Zip Code

914 960-0641

Telephone Number (if available)

yabeholdingcompanyllc@gmail.com

E-mail Address (if available)